IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 23, 2011 Session

## JORDAN ASHTON DANELZ v. JOHN GAYDEN

**Direct Appeal from the Juvenile Court of Shelby County**
**No. N6141          Curtis S. Person, Jr. Judge**

**No. W2010-02308-COA-R3-JV** - Filed June 29, 2011

This is a parentage action in which an adult child seeks retroactive child support from his biological father. The juvenile court dismissed the petition. After a thorough review of the record, we vacate the judgment of the juvenile court for failure to join a party pursuant to Tennessee Rule of Civil Procedure 19, and we remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded.**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Adam N. Cohen and Mitchell D. Moskovitz, Memphis, Tennessee, for the appellant, Jordan Ashton Danelz.

Andrew C. Clarke, Memphis, Tennessee, for the appellee, John Gayden.

**OPINION**

Appellant, Jordan Ashton Danelz, was born on April 1, 1984. At the time of his conception and birth, Appellant's mother, Mary Debbie Danelz, was married to her then husband, Richard Eugene Danelz.[1] They married in 1974. On April 26, 1995, Ms. Danelz filed for divorce against Richard Danelz. In her complaint, Ms. Danelz averred that

---

[1]As will be discussed in detail below, neither Richard Danelz nor Ms. Danelz was made a party to this action.

Appellant was one of two children born to the marriage. The Danelzes' marital dissolution agreement and final decree of divorce provided that Richard Danelz was to pay child support to Ms. Danelz for their minor children, including Appellant.

Nine to ten months before Appellant's birth, Ms. Danelz was involved in a sexual relationship with Appellee, Dr. John Gayden. On November 14, 2002, when he was eighteen years old, Appellant filed a petition to establish parentage in the Juvenile Court of Memphis and Shelby County. Appellant alleged that Dr. Gayden was his natural father and sought a determination of paternity, retroactive child support from his date of birth, and reasonable attorney's fees and expenses. In support of his petition, Appellant filed an affidavit in which he stated that he was born to Ms. Danelz on April 1, 1984; that approximately nine to ten months prior to his birth, Ms. Danelz was involved in a sexual relationship with Dr. Gayden; that Ms. Danelz told Appellant that Dr. Gayden was his natural father; and that Appellant bears a striking resemblance to Dr. Gayden. Appellant filed an affidavit by Ms. Danelz in which she averred substantially the same information. Appellant also filed a motion for discovery and for paternity testing.

In response, Dr. Gayden filed a motion to dismiss for failure to join an indispensable party, asserting that Ms. Danelz and Richard Danelz were the real parties in interest.[2] Dr. Gayden also filed a second motion to dismiss for failure to state a claim upon which relief can be granted. Dr. Gayden then filed separate motions to strike the affidavits of Appellant and Ms. Danelz. As to Ms. Danelz's affidavit, Dr. Gayden argued that she was judicially estopped from contradicting her sworn statements in the divorce proceeding to the effect that Appellant was Richard Danelz's son. As to Appellant's affidavit, Dr. Gayden argued that it was not based on personal knowledge. By order of June 24, 2003, the juvenile court granted Dr. Gayden's motions to strike, denied Appellant's motion for paternity testing, and dismissed Appellant's petition.[3]

Appellant appealed the juvenile court's decision to this Court in *Danelz v. Gayden*, No. W2003-01649-COA-R3-JV, 2004 WL 1838571 (Tenn. Ct. App. Aug. 17, 2004) *perm. app. denied* (March 21, 2005). In Appellant's first appeal, we determined that, because he

---

[2]For clarity's sake we note that Dr. Gayden's first motion to dismiss cited only Tenn. R. Civ. P. 19. "Rule 19 concerns compulsory joinder of persons . . . to an action that has been brought by a party otherwise entitled to bring the action." Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 6-6(b). The real party in interest rule is a distinct rule found at Tenn. R. Civ. 17.01 and concerns a plaintiff who has brought an action that he is not entitled to bring "because only some other person may bring the claim." *Id.*

[3]The juvenile court's June 24, 2003 order did not substantively address Dr. Gayden's motion to dismiss for failure to join an indispensable party, presumably because the juvenile court dismissed Appellant's petition.

was a minor at the time of the Danelzes' divorce and was not a party to that proceeding, Appellant was not judicially estopped from bringing a petition against Dr. Gayden. *Id.* at *4. We also determined that, because Ms. Danelz was not a party to the instant proceeding and was rather "an affiant making statements about matters not within [Appellant's] personal knowledge," her affidavit should have been considered. *Id.* We reversed and remanded to the juvenile court for genetic testing of Appellant and Dr. Gayden.[4]

On remand, genetic testing revealed a 99.992% probability that Dr. Gayden is Appellant's biological father. On April 7, 2008, Dr. Gayden filed a third motion to dismiss relying on the Tennessee Supreme Court's decision in *Lichtenwalter v. Lichtenwalter*, 229 S.W.3d 690 (Tenn. 2007). Based on his reading of *Lichtenwalter*, Dr. Gayden asserted that Appellant did not have a cause of action to recover child support payments from him. By order entered May 28, 2008, the juvenile court denied Dr. Gayden's third motion to dismiss and found that "John Gayden is the father of Jordan Ashton Daniels [sic]." On June 11, 2008, Dr. Gayden filed a motion for interlocutory appeal to this Court pursuant to Tennessee Rules of Appellate Procedure 9. In an order entered June 27, 2008, the juvenile court granted Dr. Gayden's motion and found that "[w]hile this Honorable Court has found that *Lichtenwalter* does not preclude the Petitioner's claim, reasonable minds may differ as to the Court's interpretation." We denied Dr. Gayden's Rule 9 application by order entered September 11, 2008. Dr. Gayden sought further review by the Tennessee Supreme Court, which denied his motion by order entered December 8, 2008.

On March 25, 2009, Dr. Gayden filed a Motion to Dismiss Paternity Action and to Reconsider Order of Court Dated May 28, 2008. Dr. Gayden's fourth motion to dismiss relied on his interpretation of *In re: A.N.F.*, No. W2007-02122-COA-R3-PT, 2008 WL 4334712 (Tenn. Ct. App. Sept. 24, 2008). On April 17, 2009, Appellant filed a response and counter-motion for attorney's fees and expenses and requested an interim assessment of attorney's fees. On August 28, 2009, the juvenile court entered an order denying Dr. Gayden's motion to dismiss and denying Appellant's motion for attorney's fees.

Importantly, the juvenile court's August 28, 2009 order also found Richard Danelz to be an indispensable party pursuant to Tennessee Rules of Civil Procedure 19.01 and stayed the proceedings until he was made a party to the proceedings.

On September 1, 2009, Dr. Gayden filed a fifth motion to dismiss. Therein, Dr. Gayden incorporated his third motion to dismiss by reference and additionally relied upon

---

[4]Dr. Gayden filed a petition for rehearing with this Court, which was denied by order of October 26, 2004. The Tennessee Supreme Court denied Dr. Gayden's application for permission to appeal on March 21, 2005.

this Court's opinion in *State of Tennessee, ex. rel. Kennamore v. Thompson*, No. W2009-00034-COA-R3-JV, 2009 WL 2632759 (Tenn. Ct. App. Aug. 27, 2009).

On December 21, 2009, the juvenile court entered an order containing its findings of fact and conclusions of law. The juvenile court confirmed parentage. Specifically, the order stated that, "Dr. Gayden is conclusively [Appellant's] biological father according to genetic testing. [Appellant's] parentage is no longer at issue." However, the juvenile court took a different position from that taken in its June 27, 2008 order granting interlocutory appeal, *supra*, and held that *Lichtenwalter* and the applicable child support statutes did not provide a cause of action for an adult child seeking retroactive child support where no existing child support order was in place. Consequently, the juvenile court dismissed Appellant's suit. Nevertheless, the juvenile court granted Appellant's request for attorney's fees "with the amount to be reserved for final resolution."

On August 31, 2010, Dr. Gayden filed a response and objection to Appellant's request for attorney's fees and costs. On September 2, 2010, Appellant filed an affidavit of attorney's fees and suit expenses. On September 28, 2010, the juvenile court entered an order granting Appellant's request for all claimed fees and suit expenses in the amount of $50,789.08.

On October 12, 2010, Appellant filed a notice of appeal to this Court, raising the following issues, as restated from his brief:

> (1) Whether the trial court erred by dismissing Appellant's claim for child support and other child rearing costs?
>
> (2) Whether Dr. Gayden should be required to pay all of Appellant's attorney's fees and suit expenses associated with this appeal?

Additionally, in the posture of Appellee, Dr. Gayden raises the following issues, as restated from his brief:

> (3) Whether the trial court erred in determining that Dr. Gayden was Appellant's legal father?
>
> (4) Whether the trial court erred in granting Appellant's request for attorney's fees?

We review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is *de*

*novo*. ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000).

In the course of this Court's review of the appellate record, we ascertained a procedural defect. Specifically, the juvenile court's order of August 28, 2009, found Richard Danelz to be an indispensable party pursuant to Tennessee Rule of Civil Procedure 19.01 and stayed the proceedings until he was made a party. However, Richard Danelz was never added as a party.

On May 17, 2011, this Court entered an order indicating that we could "find nothing in the record reflecting that the trial court addressed the effect of dismissal of the action upon the rights and/or liabilities of Richard Danelz subsequent to its order of August 28, 2009, finding that Richard Danelz is an indispensable party pursuant to Rule 19 of the Tennessee Rules of Civil Procedure." Therein, we directed Appellant to obtain entry of a final judgment or show cause why this appeal should not be dismissed for failure to appeal an appealable order or judgment.

In response, the juvenile court entered an order on May 24, 2011, in which it made the express determination that there was no just reason for delay and directed the entry of a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. The juvenile court further found that its dismissal of Appellant's claim for child support "rendered moot" its August 28, 2009 order requiring Richard Danelz to be made an indispensable party.

It is in this procedural posture that the appeal is now before this Court. After reviewing the record, we conclude that the juvenile court erred by failing to join Richard Danelz as a party because his presence in the litigation is needed for a just adjudication pursuant to Tenn. R. Civ. P. 19. A review of the proper procedure for establishing parentage, as well as a review of the juvenile court's orders, reveals the necessity of Richard Danelz's inclusion as a party in this matter.

The determination of a child's legal father is a two-step process.[5] ***In re T.K.Y.***, 205 S.W.3d 343, 349 (Tenn. 2006). First, we must look to the parentage statutes, contained at Tenn. Code Ann. §§ 36-2-301 to -322, to determine the child's biological father. ***Id.*** Then, we are to look to the adoption and termination statutes, contained at Tenn. Code Ann. §§ 36-1-101 to -142, to determine whether the biological father is also the legal father. ***Id.***

In this case, the trial court determined Dr. Gayden to be the biological father of Appellant. The court based its conclusion on genetic testing showing a probability of

---

[5]Tenn. Code Ann. § 36-2-305(b)(1)(A) provides that, "A complaint to establish parentage of a child may be filed by [t]he child, if the child has reached the age of majority. . . ."

paternity of greater than 99%. In the face of such a statistical probability, a man seeking to contest paternity must meet a very high evidentiary standard.[6] *Id.* at 350; ***Watermeier v. Moss***, No. W2009-00789-COA-R3-JV, 2009 WL 3486426, at *7 (Tenn. Ct. App. Oct. 29, 2009). From our review of the record, Dr. Gayden does not contest that he is the biological father of Appellant. This concludes the first required step under ***T.K.Y.***

It is in considering the second step, i.e., whether Dr. Gayden is Appellant's legal father, that the procedural defect in the juvenile court becomes apparent. As stated in ***T.K.Y.***, "[a] legal father's rights may only be terminated pursuant to statutory procedures," namely the adoption and termination statutes. 205 S.W.3d at 351. A "legal parent" is defined, in relevant part, as:

> (B) A man who is or has been married to the biological mother of the child if the child was born during the marriage or within three hundred (300) days after the marriage was terminated for any reason, or if the child was born after a decree of separation

_____

[6]If DNA test results show a 99% probability of paternity and a man wishes to contest paternity, he must establish by clear and convincing evidence one of the following:

> (i) The putative father had undergone a medical sterilization procedure prior to the probable period of conception, or other medical evidence demonstrates that he was medically incapable of conceiving a child during the probable period of conception;

> (ii) That the putative father had no access to the child's mother during the probable period of conception;

> (iii) That the putative father has, or had, an identical twin who had sexual relations with the child's mother during the probable period of conception; or

> (iv) The putative father presents evidence in the form of an affidavit that another man has engaged in sexual relations with the mother of the child in question during the period of probable conception. In this case, the court shall order genetic testing of that other man in conformity with this section. The results of that genetic test must indicate that the other man has a statistical probability of paternity of ninety-five (95%) or greater to establish an effective defense pursuant to this subdivision.

Tenn. Code Ann. § 24-7-112(b)(2)(C)(2000); *see also **In re T.K.Y.***, 205 S.W.3d at 350-51.

was entered by a court;

    *     *     *     *

(D) A man who has been adjudicated to be the legal father of the child by any court or administrative body of this state or any other state or territory or foreign country or who has signed, pursuant to §§ 24-7-113, 68-3-203(g), 68-3-302 or 68-3-305(b), an unrevoked and sworn acknowledgment of paternity under the provisions of Tennessee law, or who has signed such a sworn acknowledgment pursuant to the law of any other state, territory, or foreign country;

    *     *     *     *

(F) A man shall not be a legal parent of a child based solely on blood, genetic, or DNA testing determining that he is the biological parent of the child without either a court order or voluntary acknowledgment of paternity pursuant to § 24-7-113. Such test may provide a basis for an order establishing paternity by a court of competent jurisdiction, pursuant to the requirements of § 24-7-112[.]

Tenn. Code Ann. § 36-1-102(28).

As our Supreme Court has noted, under these statutory definitions, "the biological father is not automatically the legal father of a child. Rather, he is only the legal father *if* he is married to the mother at the probable time of conception or if he has been adjudicated to be the legal father." *In re T.K.Y.*, 205 S.W.3d at 352 (emphasis in original); *see also In re A.N.F.*, No. W2007-02122-COA-R3-PT, 2008 WL 4334712, at *15-16 (Tenn. Ct. App. Sept. 24, 2008); *but see Watermeier*, 2009 WL 3486426, at *8.

In this case, it is unclear whether the juvenile court performed the second half of the two-part analysis required by *T.K.Y.* and adjudicated Dr. Gayden as Appellant's legal father. *See In re T.K.Y.*, 205 S.W.3d at 349, 351-53. The juvenile court's orders on the matter are ambiguous. The first order addressing the matter, entered May 28, 2008, adopts the findings and recommendations of the referee, and finds "[t]hat John Gayden is the father of Jordan Ashton Daniels [sic]."[7] The order contains no further explanation, reasoning, or evidentiary basis. Notably, this order does not distinguish between biological and legal fatherhood.

---

[7] According to Tenn Code Ann § 37-1-107(f) the recommendations of the referee become a court order upon confirmation by the juvenile court judge. *See also* Tenn. R. Juv. P. 4(d).

The only other order in the appellate record addressing the status of Dr. Gayden's fatherhood was entered on December 21, 2009, which is the order ostensibly appealed. This order also adopts the detailed findings of fact and conclusions of law of the referee. The December 21, 2009 order recites the procedural history of the case, including the above cited finding from the court's May 28, 2008 order. Further, the December 21, 2009 order states that "Dr. Gayden is conclusively [Appellant's] biological father according to genetic testing. Jordan's parentage is no longer at issue." The court then analyzed whether Appellant was entitled to retroactive child support and concluded that he was not.

However, the juvenile court made no specific finding as to whether Dr. Gayden, in addition to being Appellant's biological father, was also Appellant's legal father. Because this was a required step under *T.K.Y.*, this is a separate finding and should be included in the court's findings of fact and conclusion of law under Tenn. R. Civ. P. 52. We could, perhaps, infer that the juvenile court's intention was that Dr. Gayden was Appellant's legal father, or else it would not have progressed into an analysis of whether child support was owed by Dr. Gayden. Indeed, both Appellant and Dr. Gayden apparently concede that the juvenile court determined Dr. Gayden to be the legal father. However, under *T.K.Y.*, this is a required analytical step, and we decline to infer such a crucial finding, particularly where the court's order is devoid of analysis on the issue.

The importance of the full two-step analysis is magnified here because another man exists, Richard Danelz, who has been previously determined to be the Appellant's legal father. The appellate record contains the following, attached as exhibits to Dr. Gayden's various motions to dismiss: (1) Ms. Danelz's divorce complaint, entered April 26, 1995, in which she avers that Appellant was one of "two children . . . born of the marriage"; (2) the Danelzes' marital dissolution agreement by which Ms. Danelz was granted custody, and Richard Danelz visitation, to the "parties' two minor children," and by which Richard Danelz was required to pay monthly child support; (3) the final decree of divorce entered August 30, 1995, in which the Chancery Court for Shelby County determined "[t]hat custody of the parties' two minor children, Ashley Diann and Jordan Ashton, is awarded to [Ms. Danelz] with [Richard Danelz] being [sic] and he is hereby granted reasonable visitation privileges"; (4) an addendum to the marital dissolution agreement regarding further child support arrangements; and (5) a transcription of Appellant's birth certificate listing Richard Eugene Danelz, II as the "Father."

It appears from these bare facts that Richard Danelz maintains a claim to being Appellant's legal father. While he is not, as determined by the juvenile court after genetic testing, Appellant's biological father, he meets the statutory definition of a "legal parent" pursuant to Tenn. Code Ann. § 36-1-102(28)(B). As such, Mr. Danelz has certain vested

legal rights by virtue of that status. Moreover, as mentioned above, the trial court determined him to be an indispensable party pursuant to Tenn. R. Civ. P. 19.01. Based on these facts, the proper course for the juvenile court to have taken was to adjudicate, as between Dr. Gayden and Richard Danelz, which man was Appellant's legal father before deciding the issue of retroactive child support. *In re T.K.Y.*, 205 S.W.3d at 352; *see also In re A.N.F.*, No. W2007-02122-COA-R3-PT, 2008 WL 4334712, at *15-16 (Tenn. Ct. App. Sept. 24, 2008); *but see Watermeier*, 2009 WL 3486426, at *8.[8]

In order to properly adjudicate which man was Appellant's legal father, both men with claims to being his father must have been included as parties. Otherwise, any order adjudicating one man as the legal father would necessarily either affect the parental rights of the other man or create legal fatherhood status in two men simultaneously.

We find support for this position in this Court's decision in *Shell v. Law*, 935 S.W.2d 402 (Tenn. Ct. App. 1996). Therein, a mother brought a paternity action against her former paramour. *Id.* at 404. Genetic testing showed a 99.79% probability that the paramour was the child's biological father, and a jury found him to be the father. *Id.* On appeal, the paramour asserted that the mother's ex-husband, who had legitimated the child as his own, was an indispensable party to the paternity suit pursuant to Tenn. R. Civ. P. 19.01. *Id.* at 410. However, during the pendency of the litigation, the ex-husband, having stipulated with the mother that the child was not his own, terminated his own parental rights. Consequently, we held that because "the parental rights of the husband had been terminated . . .[h]e had no other nor further interest in the outcome of [the] case." *Id.*; *see also Florida Dep't of Revenue v. Cummings*, 930 So.2d 604, 607 (Fla. 2006) (holding that "the legal father is an indispensable party in an action to determine paternity and to place support obligations on another man unless it is conclusively established that the legal father's rights to the child have been divested by some earlier judgment").

In the case at hand, we are presented with a situation in which the presumed legal father, Richard Danelz, has existing parental rights, which, so far as the record reveals, have not been terminated. Thus, he has a continuing vested legal interest in his parental rights, which are the subject of this paternity action, and he is, therefore, a party whose joinder is required pursuant to Tenn. R. Civ. P. 19.

We note again that the juvenile court has already made this finding. The juvenile court determined in its August 28, 2009 order that Richard Danelz was an indispensable party pursuant to Rule 19.01 and stayed all proceedings until he was made a party. Rule 19.01

---

[8]We note that, in all three cited cases, both men claiming to be the legal father were included as parties.

provides, in relevant part, as follows:

> A person who is subject to service of process shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of this claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person properly should join as a plaintiff but refuses to do so, he or she may be made a defendant, or in a proper case, an involuntary plaintiff.

Tenn. R. Civ. P. 19.01.

Further, Rule 19.02 provides:

> If a person as described in Rule 19.01(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it; or should be stayed or dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether or not a judgment rendered in the person's absence will be adequate; and (4) whether or not the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

There is some ambiguity regarding the juvenile court's use of the term "indispensable party" in reference to Tenn. R. Civ. P. 19.01, which we note does not use that term. Tenn. R. Civ. P. 19 "evolved from the common-law doctrines of 'necessary' and 'indispensable' parties." Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 6-6(d), p. 670 (2d. ed. 2004). However, the terms are often used colloquially and interchangeably by lawyers and judges in a broader sense than they are used in the Rules of Civil Procedure. *Id.*

-10-

at 6-72.  Rule 19 does not use the term "necessary" party at all.  *Id.* And "'indispensable' parties may not, by definition, be joined.  The latter term is appropriate only with respect to persons whose joinder is not feasible and without whom the action must be dismissed pursuant to the factors set forth in Rule 19.02."  *Id.* at 6-82 n.353.  That is, if the juvenile court found Richard Danelz to be an indispensable party under Rule 19.02, then it was required to stay or dismiss the action.  Tenn. R. Civ. P. 19.02.  If, on the other hand, the juvenile court found Richard Danelz to be a party whose joinder was required by Rule 19.01, then the court should have determined, under Rule 19.02, whether he could be made a party and, if not, "whether in equity and good conscience," and applying the appropriate factors, the action should proceed without him.  Tenn. R. Civ. P. 19.02.

While using the words "necessary" and "indispensable" in their colloquial sense, this Court recently stated the purpose and effect of Rule 19:

> The rule "is designed to protect the interests of absent persons as well as those already before the court from multiple litigation and inconsistent judicial determinations." *Citizens Real Estate & Loan Co., Inc. v. Mountain States Dev. Corp.*, 633 S.W.2d 763, 766 (Tenn. Ct. App. 1981) (citing 7 Wright & Miller, Federal Practice and Procedure, § 1602).

> We note that the language of Rule 19 is mandatory and directive; one who is an indispensable and necessary party "*shall* be joined as a party." Tenn. R. Civ. P. 19.01 (emphasis added). The requirement of joinder of indispensable and necessary parties "appears absolute and inflexible," and applies to both trial courts and appellate courts. *Pope v. Kelsey*, No. 86-17-II, 1986 WL 6564, at *2 (Tenn. Ct. App. June 13, 1986), *no perm. app.* (quoting *Glickauf v. Moss*, 23 Ill. App. 3d 679, 320 N.E.2d 132, 135-316 (Ill.1974)). When an indispensable and necessary party has not been joined, neither the trial court nor the appellate court may proceed further with the matter. *Id.* The parties are of course obliged to bring to the court's attention the necessity of such a joinder; however, even if the parties fail to do so, the trial court or even the appellate court must *sua sponte* enforce this principle of law. *Id.* (quoting *Glickauf*, 320 N.E.2d at 135-36).

*Baker v. Foster*, No. W2009-00214-COA-R3-CV, 2010 WL 174773, at *4 (Tenn. Ct. App. Jan. 20, 2010), *no perm. app.*

Notwithstanding the juvenile court's order on the matter, Richard Danelz was never added as a party in the instant litigation. In response to this Court's show cause order of May 17, 2011, the juvenile court entered an order finding that the issue was rendered moot by the juvenile court's dismissal of the case. We concede that, in the procedural posture that the juvenile court received this Court's May 17 order, the issue of Richard Danelz's necessity as a party may have appeared moot because of the earlier dismissal. However, such a conclusion fails to consider that the failure to join a party required under Rule 19 prevents the court from deciding the case in his or her absence, unless a separate finding is made under Rule 19.02 that he or she is not "indispensable." In the absence of such a finding, no judgment could be entered, in the instant case, that would render Richard Danelz's absence moot. After the juvenile court determined that Richard Danelz's joinder was required for a just adjudication, "neither the trial court nor the appellate court may proceed further with the matter." *Baker*, 2010 WL 174773, at \*4; *Citizens Real Estate & Loan Co.*, 633 S.W.2d at 765; *see also* Lawrence A. Pivnick, Tennessee Circuit Court Practice § 5:1 n.21 (2011 ) ("If a party is determined to be indispensable, the action may not proceed in his absence.").

Consequently, we must vacate the judgment of the trial court. On remand, the trial court should determine whether Richard Danelz can be made a party, and if not, "whether in equity and good conscience the action should proceed among the parties before it; or should be stayed or dismissed, the absent person being thus regarded as indispensable." Tenn. R. Civ. P. 19.02. Following this determination, if Richard Danelz is made a party, then the court should proceed to determine, as between Richard Danelz and Dr. Gayden, which man is Appellant's legal father. If Dr. Gayden is determined to be the legal father, only then should the court proceed to determine whether Appellant is entitled to retroactive child support.

Dr. Gayden has raised as an issue on cross-appeal the juvenile court's award of attorney's fees to Appellant. The juvenile court's December 21, 2009 order left the issue unresolved and stated that "[u]pon application and proof of reasonable attorney's fees this Court will address specific final costs." After hearing further evidence, the juvenile court granted Appellant's motion and awarded a fee in the amount of $50,789.08. Because we hereby vacate the judgment below and remand for further proceedings, and because the juvenile court's award of attorney's fees was predicated upon a final resolution of this case, we conclude that the award of $50,789.08 was premature and vacate the award.

Additionally, Appellant has requested this Court to award him appellate attorney's fees and expenses. However, Appellant has not set forth a legal argument regarding why he may be entitled to such relief. An award of appellate attorney's fees is a matter within this Court's sound discretion. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). Exercising that discretion, we respectfully decline to award Appellant attorney's fees on

appeal.

For the foregoing reasons, we vacate the judgment of the juvenile court and remand for further proceedings consistent with this opinion. Costs of this appeal are assessed one-half to the Appellant, Jordan Ashton Danelz, and his surety, and one-half to the Appellee, John Gayden, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE